NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

ANDREW DEVON MURRAY, *Appellant*.

No. 1 CA-CR 17-0423
FILED 11-1-2018

---

Appeal from the Superior Court in Maricopa County
No. CR2015-104086-001
The Honorable Mark H. Brain, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Vice Chief Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**J O N E S**, Judge:

**¶1**        Andrew Murray appeals his convictions and sentences arising from a stabbing incident.  Murray argues the trial court erred by: (1) allowing the State to peremptorily strike a potential juror in violation of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); (2) precluding him from impeaching a witness with evidence that the witness anticipated favorable treatment in an unrelated criminal matter in exchange for his testimony; and (3) permitting a detective to testify regarding the out-of-court statements of a witness and the victim.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        In January 2015, Murray hit the victim in the head with a steel rod before repeatedly stabbing him with a knife, causing life-threatening injuries.[1] Robert M. found the victim bleeding in the street and called 9-1-1. The victim described the attack and his attacker to both Robert and the first responders.  Meanwhile, Murray cleaned the knife and the crime scene with bleach.

**¶3**        The jury found Murray guilty of one count of attempt to commit second degree murder, one count of tampering with physical evidence, and two counts of aggravated assault.[2]  The court imposed concurrent terms of imprisonment, the longest of which was 17.5 years.

---

[1]        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404, ¶ 2 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

[2]        The State also charged Murray with one count of influencing a witness, but the jury was unable to agree on a verdict and that charge was eventually dismissed without prejudice on the State's motion.

Murray timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

### I.      Peremptory Strike of Juror 79

**¶4**          During *voir dire*, a potential juror (Juror 79) reported that his son had been arrested for aggravated assault and battery in California in 2011. Murray, an African-American, challenged the prosecutor's peremptory strike of Juror 79, also African-American, arguing the strike was race-based. In response, the prosecutor explained she struck Juror 79 because of a prior arrest for assault. When Murray's counsel clarified it was Juror 79's son who had been arrested for assault and battery, the prosecutor immediately corrected herself: "Sorry, it was his son not him." The court accepted the prosecutor's explanation, found it was race-neutral, and denied Murray's challenge. Murray now argues the State's initial explanation for the peremptory strike of Juror 79 — the juror's own criminal history — was factually inaccurate and, therefore, indicates a pretextual rationale for a race-based strike.

**¶5**          The Equal Protection Clause of the Fourteenth Amendment prohibits peremptory strikes of prospective jurors based "solely on account of their race or on the assumption that [jurors of a particular race] as a group will be unable impartially to consider the State's case against a [defendant of that same race]." *Batson*, 476 U.S. at 89. Resolution of a *Batson* challenge requires three inquiries:

> (1) the party challenging the strikes must make a *prima facie* showing of discrimination; (2) the striking party must provide a race-neutral reason for the strike; and (3) if a race-neutral explanation is provided, the trial court must determine whether the challenger has carried its burden of proving purposeful racial discrimination.

*State v. Decker*, 239 Ariz. 29, 31, ¶ 6 (App. 2016) (quotation omitted). "It is not until the *third* step that the persuasiveness of the justification becomes relevant." *State v. Newell*, 212 Ariz. 389, 401, ¶ 54 (2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). Then the court must evaluate the credibility of the proffered explanation after considering factors such as "the prosecutor's demeanor; . . . how reasonable, or how improbable, the explanations are; and . . . whether the proffered rationale has some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003); *accord Newell*, 212 Ariz. at 401, ¶ 54. Given the fact-intensive nature of the inquiry,

we defer to the trial court's decision unless clearly erroneous. *Newell*, 212 Ariz. at 400-01, ¶¶ 52, 54 (citing *Miller-El*, 537 U.S. at 240, and *State v. Cruz*, 175 Ariz. 395, 398 (1993)).

**¶6**        We find no *Batson* error. Contrary to Murray's assertions otherwise, the prosecutor immediately clarified it was Juror 79's son who had previously been arrested on charges similar to those facing Murray. The prosecutor's perception that Juror 79 would be sympathetic to Murray under the circumstances is supported by the record and qualifies as a race-neutral reason for the strike. *See State v. Hernandez*, 170 Ariz. 301, 305-06 (App. 1991) ("As long as it is not based upon race, perceived sympathy on the part of a prospective juror toward a defendant is a legitimate basis for a peremptory strike.") (collecting cases); *cf. State v. Gallardo*, 225 Ariz. 560, 565, ¶ 12 (2010) (finding "criminal history" a race-neutral reason to strike a juror).

## II.        Impeachment of Robert

**¶7**        At trial, Murray sought to impeach Robert with evidence of then-pending felony charges related to "sex crimes dealing with [Robert's] child" and his expectation of a better plea agreement in exchange for his testimony against Murray. The trial court denied the request after finding the probative value of the evidence was outweighed by "the danger of prejudice[,] . . . confusing issues, misleading jury, wasting time . . . under Rule 403." Relying upon *State v. Little*, 87 Ariz. 295 (1960), Murray contends the court improperly precluded the impeachment evidence.

**¶8**        "Evidence offered to impeach the credibility of a witness by showing that he has a motive to testify on behalf of the State or against the defendant is generally admissible as proper cross-examination." *Id.* at 300. But even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Ariz. R. Evid. 403. "Unfair prejudice" means "an undue tendency to suggest a decision on an improper basis, such as emotion, sympathy or horror." *State v. Gulbrandson*, 184 Ariz. 46, 61 (1995) (citing *State v. Schurz*, 176 Ariz. 46, 52 (1993)). Because "[t]he trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice," it has broad discretion in deciding whether to exclude evidence as unfairly prejudicial. *State v. Harrison*, 195 Ariz. 28, 33, ¶ 21 (App. 1998) (citing *State v. Via*, 146 Ariz. 108, 122 (1985)).

¶9             Even viewing the evidence in the light most favorable to Murray, "maximizing its probative value and minimizing its prejudicial effect," *id.* (quoting *State v. Castro*, 163 Ariz. 465, 473 (App. 1989)), the probative value of the impeachment evidence was nominal. Robert had not been charged with any offense at the time he observed the victim lying in the street and called 9-1-1. He therefore had no motive to fabricate an observation in the hope that it would lessen his penalty in a future unrelated criminal case. *Cf. State v. Todd*, 244 Ariz. 374, 380, ¶ 15 (App. 2018) ("Because reliable evidence corroborating [the witness]'s testimony predated his need for leniency, the probative value of [the then-pending] charges [for an unrelated incident] was surely minimal."). In fact, Robert personally advised the trial court that he had no expectation of leniency in his own criminal case and his only motive for testifying was to help the victim. Given the limited probative value of the impeachment evidence and the highly inflammatory nature of the charges — sexual conduct with a minor family member — we find no abuse of discretion in its exclusion.

## III.    Hearsay

¶10             Murray argues the trial court erroneously permitted a detective to testify regarding statements made by a witness and the victim during his investigation on the grounds that they constituted inadmissible hearsay. Hearsay is an out-of-court statement used to prove the truth of the matter asserted and is generally inadmissible. *State v. Payne*, 233 Ariz. 484, 502, ¶ 49 (2013); Ariz. R. Evid. 801(c), 802. We review the court's evidentiary rulings for an abuse of discretion. *See State v. Martin*, 225 Ariz. 162, 166, ¶ 16 (App. 2010) (quoting *State v. Bronson*, 204 Ariz. 321, 324, ¶ 14 (App. 2003)).

¶11             We find no error because the statements Murray challenges were not hearsay. Both the witness and the victim testified and were subject to cross-examination. After Murray attacked their credibility, their prior consistent statements to the detective were "not hearsay" and admissible pursuant to Arizona Rule of Evidence 801(d)(1)(B)(ii) "to rehabilitate the declarant's credibility as a witness when attacked on another ground."

**CONCLUSION**

¶12        Murray's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA