NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSE T. GODOY, *Appellant.*

No. 1 CA-CR 21-0379
FILED 8-25-2022

Appeal from the Superior Court in Yuma County
No. S1400CR202000491
The Honorable Brandon S. Kinsey, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson, Rebecca Jones
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

**F U R U Y A**, Judge:

**¶1** Jose T. Godoy appeals his convictions and sentences for armed robbery and third-degree burglary, challenging the admissibility of certain evidence, statements made during the prosecutor's closing argument, the sufficiency of evidence, and the constitutionality of his sentence. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** On appeal from a criminal conviction, we view the evidence in the light most favorable to upholding the jury's verdict and resolve all inferences against the defendant. *State v. Klokic*, 219 Ariz. 241, 242, ¶ 2 n.1 (App. 2008). In May 2020, victim one ("Son") returned to his family's home in Yuma County after running an errand. Son's parents participate in foster care services. Son observed two cars near the front of the home, one had "three guys inside." His mother's car was parked outside the front of the home, as well. Son found Godoy and another individual talking to his mother, who was also a victim, outside the front door. Son observed Godoy wearing a white hoodie and "saw he was holding something" in his hoodie pocket. Son said the indentation looked "[l]ike a gun, firearm."

**¶3** Godoy was looking for Son's foster brother ("F.B.") who had been living at the house for the past year but had moved out in February 2020. Godoy claimed F.B. owed him $300. Both victims repeatedly told Godoy F.B. no longer lived there, which Godoy did not believe. Godoy stated that "[F.B. was] not paying up," "things are gonna get bad" and F.B. was putting the victims' "family in danger." Godoy then said "here's the deal, if he don't pay up, he's getting shot at," and clarified the victims' home would "get lit up" if F.B. did not pay up. Son feared for his and Mother's safety because Godoy was not "taking the hand out of his pocket," making him nervous as to what would happen next. Referring to Godoy's handling of the object in his hoodie pocket, Mother told Godoy "stop taking that out, no, it's not necessary," and asked him to remove his hand from his pocket "because it's not necessary," to which Godoy responded he would not remove his hand.

¶4 The victims made a deal with Godoy so he would leave. They paid him $25 and told him to come back later for the rest of the money. Son gave Godoy the money—his Mother's money—and Godoy said he was going to "call [his] boys off" because they were ready to "shoot this house," and further stated he only wanted what he was owed so "no body dies."

¶5 During the entire incident, Son believed Godoy had a gun and observed his Mother as "nervous" and "distraught" throughout, crying afterward. After Godoy left, Son inspected Mother's vehicle, which she had left unlocked. The contents of her purse were spread over the seats, including her wallet, which had been emptied of its cash, driver's license, and green cards. The victims called police within 20 minutes of the incident.

¶6 The State charged Godoy with (1) armed robbery (of Mother), a Class 2 felony; (2) threatening and intimidating in furtherance of a criminal street gang syndicate (both victims), a Class 3 felony; (3) third-degree burglary (Mother's vehicle), a Class 4 felony; and (4) threatening and intimidating (both victims), a Class 6 felony. Before jury deliberations, the State dismissed count four as subsumed as a lesser included offense within count two. *See* Ariz. Rev. Stat. (A.R.S.) § 13-1202(A)(1), (B).

¶7 Ahead of trial, Godoy unsuccessfully moved on various grounds to preclude the admission of door-bell video/audio footage capturing the incident, including hearsay because Mother was unavailable to testify. Part of the audio was in Spanish, which was transcribed for trial as a written exhibit. The parties stipulated this translation was "fair and accurate" without need for further foundation (but Godoy objected to its admissibility based on the same grounds).

¶8 Following a three-day trial, a jury found Godoy guilty of count one, a dangerous offense, count three, and the lesser included offense of threatening and intimidating. Godoy unsuccessfully challenged the jury's finding of dangerousness pursuant to a post-verdict Arizona Rule of Criminal Procedure ("Rule") 20 motion.

¶9 The superior court sentenced Godoy to concurrent presumptive imprisonment terms of 10.5 years for armed robbery and 2.5 years for third-degree burglary. *See* A.R.S. §§ 13-702(D) and -704(A). Godoy also received 477 days pre-incarceration credit. The court did not address the lesser threatening and intimidating conviction at sentencing or in its sentencing order.

¶10 Godoy timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

### I. Video with Audio Admissibility

¶11      Godoy argues the court erroneously permitted the door-bell video/audio footage (and accompanying transcript translating the Spanish audio) into evidence because Mother's statements were hearsay. We review a court's ruling on the admissibility of evidence over hearsay objections for an abuse of discretion, *State v. Chavez*, 225 Ariz. 442, 443, ¶ 5 (App. 2010), but review interpretation of the rules of evidence de novo, *State v. Zaid*, 249 Ariz. 154, 157, ¶ 5 (App. 2020) (citing *State v. Romero*, 239 Ariz. 6, 9, ¶ 11 (2016)). We may affirm the court's ruling if it was "legally correct for any reason." *Chavez*, 225 Ariz. at 443, ¶ 5 (citing *State v. Perez*, 141 Ariz. 459, 464 (1984)).

¶12      Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is generally inadmissible. Ariz. R. Evid. 801(c), 802. But hearsay statements may be admissible if they fall within certain exceptions, no matter if the declarant is available to testify. Ariz. R. Evid. 803. Here, Mother's statements qualify as "present sense impressions" or "excited utterances," both exceptions to the hearsay rule. *See* Ariz. R. Evid. 803(1), (2). A present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Ariz. R. Evid. 803(1). An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Ariz. R. Evid. 803(2). Mother's recorded statements meet both exceptions. She made descriptive statements while observing a crime unfold (present sense impressions) and displayed reactions to startling experiences while present during the incident (excited utterances). *See State v. Steinle*, 239 Ariz. 415, 420, ¶ 23 (2016) (explaining a video capturing the verbal statements made by witnesses to a stabbing incident qualified as excited utterances and present sense impressions). The court properly admitted the audio recordings of Mother's statements in this case.

### II. Prosecutor's Statements During Closing Argument

¶13      Godoy argues the prosecutor misstated the law during closing argument by characterizing armed robbery as requiring that a defendant need only *possess* a deadly weapon or simulated deadly weapon rather than be "armed with" one—arguably lessening the burden of proof required to find him guilty. Because Godoy objected to the prosecutor's alleged misstatement at trial, we review for an abuse of discretion. *State v. Decker*, 239 Ariz. 29, 32, ¶¶ 13–14 (2016) (citation omitted). We may affirm the

superior court's ruling for any reason supported by the record. *State v. Banda*, 232 Ariz. 582, 585, ¶ 13 n.2 (App. 2013).

¶14          We will not examine a prosecutor's alleged misstatement in a vacuum but "look at the context and examine the entire record and totality of the circumstances." *See State v. Rutledge*, 205 Ariz. 7, 13, ¶ 33 (2003). The following contains the relevant portion of the prosecutor's closing:

> The offenses do not require the defendant to point a gun at the victim. It is not required. Actually firing a gun is not required. Physically hurting one of the victims is not a requirement. . . .
>
> And you do not even have to necessarily agree on the same story exactly, only that the charges have been met beyond a reasonable doubt. That is it.
>
> So for count one, armed robbery, one, the defendant took property of another. . . . and the defendant used or threatened to use force against any person to secure surrendering of property, and *that the defendant was armed with a deadly weapon, simulated deadly weapon or firearm.*
>
> As I said, [the statute] does not say used a gun to threaten, pointed a gun to threaten, *only that he was armed, that he possessed it*. That is it.

(Emphasis added.)

¶15          In context, the prosecutor was assuring the jury that the actual discharge of a weapon or physical injury caused by a deadly weapon are not statutory elements of armed robbery. Rather, the mere threat of force while armed with a deadly weapon or simulated deadly weapon is sufficient. Although our legislature has not expressly defined "armed with," we hold this explanation is an accurate statement of the law as charged. A.R.S. §§ 13-105, -1901, -1902(A), and -1904(A)(1); *see also State v. Snider*, 233 Ariz. 243, 246, ¶ 8 (App. 2013) (explaining § 13-1904(A)(1) does not require use or threatened use of a weapon, only that defendant be "armed with" a deadly weapon or simulated deadly weapon during commission of crime and affirming conviction given ample evidence that defendant "possessed a handgun during the armed robberies alleged").

¶16          The State further clarified to the jury during rebuttal:

If we're going to get into a debate over the meaning of armed robbery . . ., let's look at the actual text of the statute. You can decide for yourself.

[A.R.S. § 13-1904](A)(1), which is what [Godoy] is officially charged with, is *armed with* a deadly weapon or simulated deadly weapon; [A.R.S. § 13-1904(A)(2)], *uses or threatens to use* a deadly weapon or dangerous instrument or simulated deadly weapon. They're distinct, members of the jury, in black and white right there.

(Emphasis added.) The court also properly instructed the jury on armed robbery, stating, among other things, the offense requires proof that the defendant be "*armed with* a deadly weapon, simulated deadly weapon or firearm" while committing the robbery. (Emphasis added.)

¶17          Examining the record as a whole, the court did not abuse its discretion in overruling Godoy's objection. *See Decker*, 239 Ariz. at 34, ¶ 25 (explaining that where prosecutor's argument correctly stated Arizona law, court did not err by overruling objection to it).

### III.     Sufficiency of the Evidence

¶18          Godoy also argues the court erroneously denied his motion for directed verdict because there was insufficient evidence to support his convictions for armed robbery and third-degree burglary. A challenge to the sufficiency of the evidence is a question of law we review de novo. *Snider*, 233 Ariz. at 245, ¶ 4 (citing *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011)). In doing so, we examine exclusively whether "substantial evidence supports the verdict." *State v. Sharma*, 216 Ariz. 292, 294, ¶ 7 (App. 2007). Substantial evidence is proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of [a] defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67 (1990). "Evidence sufficient to support a conviction can be direct or circumstantial," *Snider*, 233 Ariz. 243, ¶ 4, and we reverse on insufficiency of evidence "only where there is a complete absence of probative facts to support the conviction," *Sharma*, 216 Ariz. at 294, ¶ 7 (quoting *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996)).

¶19          A defendant commits armed robbery "if in the course of taking any property of another from his person or immediate presence and against his will, [the defendant] threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to [the defendant] taking or retaining property," A.R.S. § 13-1902(A), and the defendant is "armed with a deadly weapon or a simulated deadly weapon,"

A.R.S. § 13-1904(A)(1). "Threat" is a "verbal or physical menace of imminent physical injury to a person." A.R.S. § 13-1901(4). "Force" is "any physical act directed against a person as a means of gaining control of property." A.R.S. § 13-1901(1). A defendant commits third-degree burglary by "entering or remaining unlawfully in or on a nonresidential structure or in a fenced commercial or residential yard with the intent to commit any theft or any felony therein." A.R.S. § 13-1506(A)(1).

¶20        Here, the record contains substantial evidence to support the jury's verdicts, including testimony and video/audio evidence showing that Godoy, while keeping his hand continuously in his hoodie pocket holding something that looked "[l]ike a gun, firearm": appeared at the victims' home; demanded payment of money; and threatened that if he was not paid, "things [were] gonna get bad," that their family was "in danger," that their home would "get lit up," and that "his boys" were ready to "shoot [victims'] house," and he needed to get the money he was owed so "no body dies."

¶21        Mother referenced the object in Godoy's pocket indicating her belief it was "not necessary," and Son testified he believed this object was a gun. Son also testified Mother was significantly disturbed by the encounter. Both Son's testimony and the audio/video evidence established that Godoy's threats prompted victims to give him $25 and a promise to pay more later. The victims also later found Mother's personal belongings in her vehicle jumbled and stolen. Substantial evidence supports the jury's verdicts finding Godoy committed armed robbery against Mother and third-degree burglary of her vehicle, *see supra* ¶¶ 2–5.

¶22        Godoy asserts there was insufficient evidence to support a finding that the armed robbery was a "dangerous offense," and thus the court erroneously denied his post-verdict Rule 20 motion as to the jury's finding of dangerousness. He argues evidence of a simulated weapon alone cannot overcome the statutory requirement that a "deadly weapon or dangerous instrument" be involved for a dangerous offense finding. This much is correct. As explained, "armed robbery" involves the defendant threatening or using force against another to coerce the surrender of property while armed with "a deadly weapon or a simulated deadly weapon," A.R.S. §§ 13-1902(A) and -1904(A)(1). But a "dangerous offense" finding requires "the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument," A.R.S. § 13-105(13). *See also State v. Larin*, 233 Ariz. 202, 213, ¶ 41 (App. 2013) (explaining "a defendant could be convicted of armed robbery for using a simulated deadly weapon without that offense being dangerous"). However, we disagree that the jury was left to speculate as to whether a deadly weapon was involved here. The court

properly instructed the jury on the distinctions highlighted above. Yet the jury found that Godoy's crime was dangerous after deliberating with the benefit of the record evidence and the parties' arguments. In doing so, the jury implicitly found Godoy used an actual deadly weapon in the armed robbery, and the evidence supports such a finding, *see supra* ¶¶ 2–5.

**¶23** Godoy counters that the State presented no evidence the armed robbery involved the "discharge, use or threatening exhibition of a deadly weapon." We disagree. Son testified that he "saw [Godoy] was holding something" in his pocket, and that the indentation looked "[l]ike a gun, firearm." He further testified that he believed this object was a gun. Video footage of the incident was also submitted as evidence, in which Godoy's appearance, clothing, posture, and tone could be observed. Whether this evidence, taken together, was sufficient to determine that an actual deadly weapon was used or threateningly exhibited is a question of weight committed to the sound discretion of the jury that we will not revisit. *See State v. Lee*, 189 Ariz. 590, 603 (1997) ("When the evidence supporting a verdict is challenged on appeal, an appellate court will not reweigh the evidence. The court must view the evidence in the light most favorable to sustaining the conviction, and all reasonable inferences will be resolved against a defendant.").

### IV.    Constitutionality of Sentence

**¶24** Godoy attacks the constitutionality of his armed robbery sentence. He argues the underlying offense of armed robbery already contemplates the involvement of a deadly weapon, which increases the felony from a Class 4 (robbery) to a Class 2 (armed robbery). *See* A.R.S. §§ 13-1902 and -1904(A)(1), (B). Thus, Godoy contends that permitting the jury to use the same fact for sentencing enhancement purposes violates double jeopardy principles. *Compare* A.R.S. §§ 13-702 and -703 (sentencing ranges for first-time and repetitive offenders), *with* A.R.S. § 13-704 (sentencing ranges for dangerous offenders). Because Godoy raises this constitutional claim for the first time on appeal, we review for fundamental error only. *See State v. Williams*, 220 Ariz. 331, 334, ¶ 8 (App. 2008); *State v. Escalante*, 245 Ariz. 135, 140–42, ¶¶ 12–21 (2018). Godoy, therefore, bears the burden of establishing that fundamental, prejudicial error occurred. *Escalante*, 245 Ariz. at 142, ¶ 21.

**¶25** Godoy contends we should distinguish his case from our supreme court's decision in *State v. Bly*, 127 Ariz. 370 (1980). We decline to do so. The *Bly* court made clear that "[i]f the presence of a deadly weapon, as an element of the crime or otherwise, moves the legislature to impose

more severe punishment for the offense, we must abide by the legislative determination." *Id.* at 373. The presence of a deadly weapon may be an element of a crime and give rise to harsher punishment, "but that does not mean a defendant is being punished time and time again for a single act[,] [i]t merely defines a single harsh punishment for a single severe crime." *Id.* Our supreme court "reaffirm[ed] the rule of *Bly*" in *State v. Lara*, 171 Ariz. 282, 285 (1992). *See also State v. Stevens*, 1 CA-CR 14-0642, 2015 WL 8475986, at *2–*3, ¶¶ 9, 13 (Ariz. App. Dec. 10, 2015) (mem. decision) (citations omitted) (explaining "[a] sentencing enhancement is distinct from the elements of a crime; an enhancement addresses the mode in which the crime was committed" and "the United States Supreme Court and Arizona Supreme Court have found that sentence enhancements do not violate double jeopardy"). Godoy's position contravenes *Bly*, and thus fails to establish error.

## V. Count Two Sentencing (Lesser-Included Offense)

¶26 The parties agree the superior court did not address Godoy's threatening and intimidating conviction, the lesser included offense of count two, at sentencing or in its sentencing order. The parties disagree, however, on the appropriate remedy. Godoy contends the State has waived the issue by failing to file a timely notice of appeal. And the State requests that we remand to the court for entrance of sentence as to this conviction, as the court's failure to do so constitutes fundamental error. Because no sentence was ever entered upon the threatening and intimidating conviction, the court has yet to enter judgment as to this sentence. Without a final judgment imposing sentence on this conviction, we lack jurisdiction to address any issue surrounding sentencing for count two until the superior court does impose a sentence on the conviction. *See State v. Nunn*, 250 Ariz. 366, 368, ¶ 4 (App. 2020) ("We have an independent duty to determine whether we have jurisdiction on appeal."); Ariz. R. Crim. P. 31.2(a)(2)(A) ("A *notice of appeal* from a judgment of conviction and imposition of sentence must be filed no later than 20 days after the oral pronouncement of sentence.").

## CONCLUSION

¶27 For the foregoing reasons, we affirm.

