IN THE COURT OF APPEALS

FILED BY CLERK

SEP −6 2013

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,                    )
                                         )        2 CA-CR 2012-0479
                    Appellee,            )        DEPARTMENT B
                                         )
        v.                               )        O P I N I O N
                                         )
TYNERIAL RAY KINDRED,                    )
                                         )
                    Appellant.           )
                                         )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20122560001

Honorable Richard S. Fields, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and David A. Sullivan                        Tucson
                                                        Attorneys for Appellee

Harriette P. Levitt                                                 Tucson
                                                        Attorney for Appellant

E C K E R S T R O M, Judge.

¶1        Tynerial Kindred appeals from his second-degree burglary conviction, arguing the evidence was insufficient to support his conviction because he did not gain entry into the structure and there was no evidence he intended to commit theft or a felony within.  We affirm.

¶2        "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant."  *State v. Greene*, 192 Ariz. 431, ¶ 12, 967 P.2d 106, 111-12 (1998).  In June 2012, an apartment complex leasing agent called 9-1-1 after seeing Kindred unscrew the light bulb in the front-porch light of a vacant second-story apartment and then "fidget[] with the doorknob," while another man stood nearby.  When police arrived, they found Kindred, who had attempted to jump from the landing, dangling by his hands from the front landing, while the other man lay flat on the landing.  Police officers found a pry bar wedged between the apartment's door and door jamb, "about a quarter of the way into the door by the master lock."  Although the door remained closed with the deadbolt intact, the "frame [was] ajar a little bit" and there was a visible gap between the door and frame.  Kindred's companion was carrying a pair of gloves, and another pair was found near where Kindred had been dangling.

¶3        Kindred was convicted after a jury trial of second-degree burglary and possession of burglary tools.  The trial court sentenced him to concurrent prison terms, the longest of which was 6.5 years.  This appeal followed.

¶4        Kindred first argues the evidence was insufficient to support his conviction for second-degree burglary because he did not enter the apartment as that term is defined

by A.R.S. § 13-1501(3). "Th[e] question of sufficiency of the evidence is one of law, subject to de novo review on appeal." *State v. West*, 226 Ariz. 559, ¶ 15, 250 P.3d 1188, 1191 (2011). "'[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* ¶ 16, *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990) (emphasis omitted). Thus, "[w]hen reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997).

**¶5** A person commits second-degree burglary by "entering or remaining unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." A.R.S. § 13-1507(A). "'Entry' means the intrusion of any part of any instrument or any part of a person's body inside the external boundaries of a structure or unit of real property." § 13-1501(3). Kindred argues that he only compromised "the exterior of the door jam[b]" with the pry bar and he therefore "had not gained entry."

**¶6** Our primary purpose in interpreting a statute is to give effect to the legislature's intent. *State v. Ross*, 214 Ariz. 280, ¶ 22, 151 P.3d 1261, 1264 (App. 2007). "We look first to the statute's language because we expect it to be 'the best and most reliable index of a statute's meaning.'" *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993), *quoting Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). If the statute's language is plain and unambiguous, we look no further. *Id.* But, "[i]f a statute is ambiguous, we consider 'the statute's context, subject matter, historical

3

background, effects and consequences, and spirit and purpose.'" *State v. Fikes*, 228 Ariz. 389, ¶ 6, 267 P.3d 1181, 1182-83 (App. 2011), *quoting Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

¶7        In support of his argument, Kindred relies on dictionary definitions of the terms "intrusion" and "inside."  Quoting *The New American Webster Handy College Dictionary*, he states the definition of "intrusion" is "the act or result of intruding; an unwelcome visit or entrance" and that "inside" means "in or into; within a body or limit; the inner part; the interior region."  Nothing in these definitions would prohibit a conclusion that the pry bar entered the apartment by intruding past the outer threshold of the door.  The pertinent question is instead whether the "external boundar[y]" of the structure, as that phrase is used in § 13-1501(3), is the exterior of the door, or whether a person or instrument must penetrate past the door in order to enter the structure.

¶8        Despite the fact that Arizona's burglary statute differs in several ways from the common law, it retains the common law requirement of entry.  *See In re Maricopa Cnty. Juv. Action No. J-75755*, 111 Ariz. 103, 105-06, 523 P.2d 1304, 1306-07 (1974); *State v. Miller*, 108 Ariz. 441, 445, 501 P.2d 383, 387 (1972).  Entry under common law burglary, consistent with § 13-1501(3), requires "some movement by the defendant across the external boundaries of the structure, some breaking of the planes created by the threshold and the four walls."  *United States v. Eichman*, 756 F. Supp. 143, 148 (S.D.N.Y. 1991), *citing* 3 Wharton's Criminal Law §§ 331-32 (C. Torcia 14th ed. 1980).  We find no authority, however, expressly discussing whether that threshold has any particular depth and thus whether entry into the threshold, without more, constitutes entry

4

into the structure. But "[t]he predominate impetus of common law burglary was 'to protect the security of the home, and the person within his home.'" *Id.*, *quoting* Note, *Statutory Burglary—The Magic of Four Walls and a Roof*, 100 U. Pa. L. Rev. 401, 427 (1951). Because a penetration into an outer barrier violates the home's security, that strongly suggests such penetration constitutes entry.

¶9      We find limited authority addressing entry under facts similar to those before us, but the bulk of that authority is consistent with our conclusion that a person must penetrate whatever forms a structure's outer boundary—a door, window, or wall, for example—but need not go further to have entered the structure. In *People v. Garcia*, the California Court of Appeal concluded that "insertion of [a crowbar] into the door jamb itself constituted entry into the residence." 16 Cal. Rptr. 3d 833, 840 (Ct. App. 2004). The Texas Court of Criminal Appeals determined that a failed attempt to open a wooden door after removing its screen door constituted entry. *Ortega v. State*, 626 S.W.2d 746, 747 (Tex. Crim. App. 1981); *see also People v. Moore*, 37 Cal. Rptr. 2d 104, 106 (Ct. App. 1994) (penetrating area between screen door and door sufficient). And breaking a door frame was found to constitute entry in *Williams v. State*, 997 S.W.2d 415, 417 (Tex. App. 1999). *See also Commonwealth v. Burke*, 467 N.E.2d 846, 848-49 (Mass. 1984) (breaking "outer storm window" entry even if inner window intact); *but see Stamps v. Commonwealth*, 602 S.W.2d 172, 173 (Ky. 1980) (breaking exterior of cinder block wall not entry; inside of blocks "not a protected space"). Thus, based on the foregoing, we conclude that the insertion of the pry bar into the door jamb constitutes entry as contemplated by § 13-1501(3).

¶10 Kindred next argues there was "a complete absence of evidence regarding the defendants' intent once they would have gained entry" because the apartment was visibly vacant—and thus contained nothing to steal except "large appliances which would have required tools and equipment" the defendants did not have. He additionally notes there was no evidence the defendants intended to commit some other felony upon entry, "such as the use of drugs."

¶11 We find no deficiency in the evidence; the jury readily could conclude that Kindred and his companion had intended to commit theft upon entering the apartment. *See* § 13-1507(A). As Kindred admits, there were items in the apartment that could be stolen. That the defendants might have been ill-equipped to steal those items does not require the jury to conclude they did not intend to do so. And the jury could conclude the defendants were unaware the apartment was vacant—a dining room light was on, there was no evidence either had looked in the apartment window, and the leasing manager testified that someone looking through the window would not necessarily be able to "tell whether there's furniture or anything else in there." In any event, as the state correctly points out, a defendant's forced entry into a structure permits a jury to infer that defendant had the requisite specific intent for burglary. *See State v. Malloy*, 131 Ariz. 125, 130, 639 P.2d 315, 320 (1981).

¶12        For the reasons stated, Kindred's convictions and sentences are affirmed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge