NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

WALTER MICHAEL ANDRUS, *Appellant.*

No. 1 CA-CR 13-0367

FILED 08-05-2014

---

Appeal from the Superior Court in Mohave County
No. S8015CR201101001
The Honorable Lee F. Jantzen, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Mohave County Legal Defender's Office, Kingman
By Diane S. McCoy
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

**C A T TA N I**, Judge:

¶1        Walter Michael Andrus appeals his conviction for harassing a public officer and the resulting term of probation.  Andrus argues (1) the evidence was insufficient to support his conviction, (2) the trial court abused its discretion by limiting his counsel's cross-examination of the victim regarding the victim's residency status, and (3) the court improperly admitted in evidence a letter from a government lawyer to Andrus.  For reasons that follow, we uphold the trial court's rulings and affirm Andrus's conviction and term of probation.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2        The victim was the clerk of the Mohave County Moccasin Justice Court, now known as the North Canyon Justice Court.  Andrus appeared in that court as a result of a ticket for speeding and driving with an expired license.  Over the course of the proceedings, Andrus submitted several filings, including a "counterclaim" in which he sought millions of dollars in damages from the victim and from the law enforcement officer who ticketed him.  Andrus later sought billions of dollars in damages from the victim and the ticketing officer.  In other filings, Andrus threatened to file "liens and encumbrances" against the victim and invoked the use of liens "as a method of recovery."  Andrus also filed suit against the victim in Utah, but a Utah court dismissed the case.

¶3        Andrus filed in the Mohave County Recorder's Office a three-page document, described in more detail below, in which he identified himself as a secured creditor and the victim and the justice court as debtors owing more than $75 billion.  Although the recorder's office accepted the document for filing, it was recorded as a "notice" rather than a "lien" because of irregularities within the document and the absence of

---

[1]        We view the facts in the light most favorable to upholding the jury's verdict.  *State v. Kindred*, 232 Ariz. 611, 613, ¶ 2, 307 P.3d 1038, 1040 (App. 2013).

documentation that ordinarily accompanies a nonconsensual lien. Because the recorder's office believed the document asserted a nonconsensual lien against a public employee, the document was indexed in Andrus's name only, without reference to the victim or the justice court.

¶4 When contacted by an investigator for the Mohave County Attorney's Office, Andrus admitted that he had filed the lien against the victim and explained why he believed he had a right to do so. Andrus also indicated that he planned to assert claims against the two justices of the peace who presided over his case, telling the investigator that the only way to get someone's attention was "to make them pay." In a letter responding to correspondence from an attorney in the Arizona Attorney General's Office representing the victim in Andrus's "counterclaim," Andrus admitted that he had filed a lien against the victim.

¶5 The State charged Andrus with one count of harassment of a public officer. At trial, Andrus again admitted that he filed the lien against the victim, but he claimed to have done so without the intent to harass, annoy, or alarm the victim. The jury convicted Andrus as charged, and the trial court placed him on three years' probation.

¶6 Andrus timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033.[2]

## DISCUSSION

## I. Sufficiency of the Evidence.

¶7 Andrus argues that the evidence was insufficient to support his conviction under A.R.S. § 13-2921(B), which provides as follows:

> A person commits harassment against a public officer or employee if the person, with intent to harass, files a nonconsensual lien against any public officer or employee that is not accompanied by an order or a judgment from a court of competent jurisdiction authorizing the filing of the lien or is not issued by a governmental entity or political subdivision or agency pursuant to its statutory authority, a validly licensed utility or water delivery company, a mechanics' lien claimant or an entity created under

---

[2]     Absent material revisions after the relevant date, we cite the current version of the statute.

> covenants, conditions, restrictions or declarations affecting
> real property.

Pursuant to A.R.S. § 13-2921(E), "harassment" is defined as "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person."

¶8        Andrus asserts that the document he filed was not a valid nonconsensual lien, as described in § 13-2921, because the county recorder did not identify or record the document as a lien. Andrus also asserts that the lien was not filed "against" the victim because the county recorder indexed the document in Andrus's name, without referencing the victim.

¶9        "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (citation omitted). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987).

¶10        The evidence was sufficient to support Andrus's conviction. The term "lien," as generally used, refers to "a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation." *Matlow v. Matlow*, 89 Ariz. 293, 297–98, 361 P.2d 648, 651 (1961). As noted above, Andrus repeatedly acknowledged filing the three-page document, and he repeatedly described or characterized it as a lien. Moreover, on the first page of the document, Andrus identified the document as his notice of filing a "UCC1 Filing Filing Statement [sic]" and a "Lien." A UCC1 form is a "financing statement." *See* U.C.C. Legal Forms § 9:506 ("UCC Financing Statement Form UCC1"), *available at* http://www.azsos.gov/Business_Services/UCC/ucc_forms.htm.[3] Except as otherwise provided by law, a financing statement such as form UCC1 is the document a secured creditor must file to perfect a security interest in property. A.R.S. § 47-9310(A).

¶11        Although the first page of Andrus's document identified only the justice court as the debtor, the second page of the document—the

---

[3]        Arizona has substantially adopted the Uniform Commercial Code. *Fin. Mgmt. Servs., Inc. v. Familian Corp.*, 183 Ariz. 497, 499 n.1, 905 P.2d 506, 508 n.1 (App. 1995); *see also* A.R.S. tit. 47.

"filing" statement Andrus identified in his "notice" — was a document from the Utah Department of Commerce acknowledging that Andrus had filed a UCC1 form in Utah. That acknowledgment identified both the victim and the justice court as debtors and Andrus as the secured party. The acknowledgment also described the victim's property on which Andrus claimed to have a lien. The document's third page, titled "Notice of Claim of Maritime Lien," described the lien and specified the amount of the lien against the justice court as being in excess of $75 billion. The lien did not separately name the victim as a debtor, but it identified the victim's property on which Andrus claimed to have a lien.

¶12        Andrus's document, considered as a whole, functioned as a filing statement and a lien against the victim. The document identified the names of the debtors and the secured party, and it described the secured property. *See Matlow*, 89 Ariz. at 297–98, 361 P.2d at 651; *see also* A.R.S. § 47-9502(A) (requirements of a financing statement); A.R.S. § 47-9504 (identification of collateral). Although there were irregularities in the document, it asserted a claim of a nonconsensual lien against the victim and gave the public notice of Andrus's claim. *See* A.R.S. § 47-9506(A) (stating that minor errors or omissions do not invalidate a financing statement that substantially satisfies the requirements of Title 47).

¶13        Andrus also argues the evidence was insufficient to support his conviction because the county recorder did not "record" the document as a lien. But a conviction under § 13-2921(B) does not require that the filing office record the document or that the filing office identify the document as a lien within its records. A person violates § 13-2921(B) by *filing* a nonconsensual lien, which is accomplished by submitting a document that is accepted by the filing office. *See* A.R.S. § 47-9516(A).

¶14        Andrus further argues that the evidence was insufficient to support his conviction because the county recorder did not index the document in the victim's name and, therefore, he did not file the lien "against" the victim. But proper indexing in the debtor's name is not an element of the offense. *See* A.R.S. § 13-2921(B). Furthermore, the failure to index a record correctly does not alter the effectiveness of the filed document. *See* A.R.S. § 47-9517. Although the lien may have been more difficult to locate because the recorder did not index the document in the victim's name or record it as a lien, the document was on file with the county recorder and was available to the public.

¶15        As noted by the State's expert, the document Andrus filed provided all the information necessary to establish a nonconsensual lien

against the victim. The expert testified that anyone who examined Andrus's document would construe it as a nonconsensual lien against all of the victim's property, regardless of the validity of Andrus's claim or the document he filed. The expert further opined that by filing the document, Andrus had impaired the victim's ability to deal with her property, and that any entity searching for liens against the victim's property would not have simply ignored the lien asserted by Andrus, despite the amount of the lien or other irregularities or deficiencies with the document.

¶16　　　Because Andrus filed a document sufficient to assert a lien, we conclude that there was sufficient evidence to support Andrus's conviction for harassment of a public officer.

## II.　　Limitation of Cross-Examination of the Victim.

¶17　　　Andrus argues he was denied his right to confront the victim because the trial court limited counsel's cross-examination of the victim regarding her residency status. Andrus argues that whether the victim lied about her residency to become and/or maintain her position as a justice of the peace was a jury question that went to her credibility and was otherwise relevant for impeachment purposes.

¶18　　　"The scope of cross-examination is committed to the sound discretion of the trial court." *State v. Robinson*, 165 Ariz. 51, 57–58, 796 P.2d 853, 859–60 (1990). "Evidentiary rulings that implicate the Confrontation Clause, however, are reviewed de novo." *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006). In our determination of whether the Confrontation Clause has been violated, "[t]he appropriate question is whether there has been any interference with the defendant's opportunity for effective cross-examination." *Kentucky v. Stincer*, 482 U.S. 730, 744 n.17 (1987).

¶19　　　When the victim worked as the clerk of the justice court, she lived in Utah and commuted to work. Andrus filed his lien against the victim when she worked as the clerk of the court. By the time of trial, the victim was no longer the clerk of the court, but was an Arizona justice of the peace and had moved to Arizona.[4]

---

[4]　　　A justice of the peace must live in the state and be an elector of the county or precinct in which she exercises her official duties. *See* A.R.S. § 11-402 (qualifications of county officers); *State v. Lynch*, 107 Ariz. 463, 464, 489 P.2d 697, 698 (1971) (stating A.R.S. § 11-402 is applicable to justices of the peace).

¶20        Andrus sought to cross-examine the victim regarding her residency and to impeach her with evidence that allegedly showed she made false statements regarding her residency status to become a justice of the peace.  Andrus claimed he had evidence the victim was not a resident of Arizona, which he argued went to the victim's credibility and her "ulterior motive" "to testify in a certain way" for various reasons.  The trial court held that Andrus's evidence regarding the victim's residency was speculative, and that the issue would require admission of a great deal of extrinsic evidence and would unnecessarily lengthen the trial.  Andrus later filed a motion for reconsideration and submitted documentation as an offer of proof to support his claims.  The trial court denied the motion, finding Andrus's claims were still speculative and that the victim's residency status was only marginally relevant.

¶21        We uphold the trial court's ruling.  Whether viewed individually or collectively, the documents Andrus provided in his offer of proof did not establish that the victim misrepresented her residency status during the process of becoming a justice of the peace.  And more importantly, the victim's residency status was not relevant to the issues before the jury.  The only relevant questions regarding the victim were whether she was a public officer, and whether a reasonable person in her situation would have felt harassed by Andrus's filings.  Accordingly, given the trial court's discretion in controlling the scope of cross-examination, we conclude that the court did not abuse its discretion by limiting cross-examination to avoid an unnecessary "trial within a trial" regarding an irrelevant issue.  *See Robinson*, 165 Ariz. at 57–58, 796 P.2d at 859–60; *see also* Ariz. R. Evid. 403 (allowing exclusion of even relevant evidence if its probative value is substantially outweighed by the danger of undue delay or wasting time).

III.    **Admission of Correspondence from an Assistant Attorney General.**

¶22        Andrus argues the trial court erred by admitting in evidence a letter written by an assistant attorney general warning Andrus not to file a false lien against the victim.  The assistant attorney general noted in the letter that filing such a false lien could be construed to be harassment and could constitute a class 1 misdemeanor under A.R.S. § 33-420(E).  At the time he wrote the letter, the assistant attorney general was not aware that Andrus had already filed a lien against the victim.

¶23        Andrus responded with his own letter in which he argued in relevant part that the victim had "acted outside of law and office" and had

gone "into dishonor and defaulted." Andrus further wrote, "Also, your letter postdates some matters in which you express interest. Among others are the maritime liens dated June 7, 2011 naming [the justice court and the victim] as debtors[.]" Andrus went on to explain why he had a right to assert a lien against the victim "in the amount of the accrued liability." The State offered the letter in evidence during the prosecutor's cross-examination of Andrus. When Andrus made a hearsay objection, the State argued that the letter was admissible to show Andrus's intent, not to prove the truth of the matters asserted in the letter. The trial court overruled Andrus's objection without explanation.

¶24 On appeal, Andrus argues the letter was inadmissible hearsay and violated his right to confront the assistant attorney general. While Andrus raised a hearsay objection before the trial court, he did not reference the Confrontation Clause. Accordingly, we review Andrus's hearsay argument for abuse of discretion, *see State v. Amaya-Ruiz*, 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990), but we review his Confrontation Clause argument only for fundamental, prejudicial error. *See State v. Hamilton*, 177 Ariz. 403, 408, 868 P.2d 986, 991 (App. 1993) ("[A]n objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other grounds."); *see also State v. Henderson*, 210 Ariz. 561, 567-69, ¶¶ 19-26, 115 P.3d 601, 607-09 (2005) (defining fundamental error as prejudicial error going to the foundation of the case).

¶25 The trial court did not abuse its discretion by denying Andrus's hearsay objection. "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c); *see also State v. Rogovich*, 188 Ariz. 38, 42, 932 P.2d 794, 798 (1997) ("Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant is not hearsay[.]"). Here, the State did not offer the letter to prove the truth of the matter asserted. The letter, along with Andrus's response to that letter, were offered to prove Andrus's intent when he filed the lien and to prove he persisted with that intent even in light of the assistant attorney general's letter. Because Andrus testified that he did not file the lien with the intent to harass the victim, it was within the trial court's discretion to admit the assistant attorney general's letter, along with Andrus's response, as evidence of Andrus's state of mind and to show his intent.

¶26 Andrus's Confrontation Clause argument is similarly unavailing. The Confrontation Clause applies only to "[t]estimonial

statements of witnesses absent from trial" offered to prove the truth of the matter asserted. *Crawford v. Washington*, 541 U.S. 36, 59 & n.9 (2004). A "testimonial statement" is a statement that has the "primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011). If the statement did not have that primary purpose, "the admissibility of [that] statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.*

¶27 The assistant attorney general's letter was not a testimonial statement and, therefore, did not implicate the Confrontation Clause. Moreover, even if the letter were testimonial, the Confrontation Clause would not have barred its use because it was offered for purposes other than to prove the truth of the matter asserted. *See Crawford*, 541 U.S. at 59 n.9. Accordingly, Andrus has not established error, much less fundamental error.

## CONCLUSION

¶28 For the foregoing reasons, we affirm Andrus's conviction and sentence of probation.

