NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTIEN MARSHAI PETTY, *Appellant*.

No. 1 CA-CR 18-0062
FILED 3-7-2019

Appeal from the Superior Court in Maricopa County
No.  CR2015-111701-003
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Bain & Lauritano, Glendale
By Amy E. Bain
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

---

**M O R S E**, Judge:

¶1        Christien Marshai Petty timely appeals his second-degree burglary conviction and the resulting sentence.  After searching the entire record, Petty's defense counsel identified no non-frivolous, arguable question of law, and in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), asked this Court to search the record for fundamental error.  Petty filed a supplemental brief in propria persona, arguing among other things that the superior court violated his right of confrontation.  Because the question of Petty's right of confrontation was an arguable issue for review, we requested that the State and defense counsel address this question in supplemental briefs to this Court.  *See Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (requiring representation on appeal when reviewing court determined that the record supported arguable claims).  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On March 11, 2015, residents in Ahwatukee called 911 and reported that they saw three suspicious individuals in their neighborhood.  These residents would later testify that they observed three men in their 20s drive up in a gray Dodge Charger, retrieve and don high-visibility safety vests from the trunk of the Charger, cross a nature preserve, and run through backyards, jumping over fences.  One resident saw that one of the individuals started to return to the Charger carrying a pillowcase.  Upon responding, police observed the gray Dodge Charger and individuals who matched the 911 callers' descriptions in safety vests, who fled the scene on foot after seeing the police.  Police also observed that an alarm was going off in one of the houses, and they saw that the back door had been smashed open.  Inside the targeted home, officers saw that most of the house was very clean, but the master bedroom looked like it had been "ransacked."  Responding officers also found a hand towel, a sock, and a safety vest nearby, apparently left by the suspects.  The owners of the house—the witness ("Witness") and her husband—were not at home at the time, but they drove in soon afterwards and walked through the house with the

police. Witness saw that jewelry was missing from her and her husband's dressers.

¶3         Upon searching the Charger, police officers found two drivers' licenses, one of which belonged to Petty, and some fingerprints on the trunk that matched Petty's. Police officers arrested Petty and two other suspects later that day, and they found that Petty had jewelry and a key to a Dodge vehicle. Witness later identified this jewelry as belonging to her and her husband.

¶4         Before trial, Witness and her husband moved out of Arizona, and the State requested that she be allowed to testify by videoconferencing because she needed to care for her husband, who suffered from dementia and other ailments. Defendant opposed this motion, but the court allowed Witness to testify via videoconference. At trial, her testimony established that jewelry was missing from her home, and she identified as hers jewelry that police officers found on Petty and others.

¶5         Petty was convicted of burglary in the second degree, a class 3 felony, and sentenced to the presumptive term of 6.5 years in prison. Petty timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033.

## DISCUSSION

### I.     Right of Confrontation

¶6         The Confrontation Clause of the Sixth Amendment guarantees defendants the right to a face-to-face confrontation with witnesses at trial. *Maryland v. Craig*, 497 U.S. 836, 844 (1990). The requirement for a physical, face-to-face confrontation can be done away with "only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850 (allowing one-way closed-circuit television to "protect[] child witnesses from the trauma of testifying in a child abuse case").

¶7         In this case we need not decide whether the superior court erred by denying Petty the opportunity to physically confront Witness because any alleged error was harmless. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005) ("Reviewing courts consider alleged trial error under the harmless error standard when a defendant objects . . . ."). Under a harmless error review, the State has the burden "to prove beyond a

reasonable doubt that the error did not contribute to or affect the verdict." *Id.*

¶8        At trial, the State was required to prove the elements of burglary in the second degree, *i.e.*, that Petty "enter[ed] or remain[ed] unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." A.R.S. § 13-1507(A). The main contested issue at trial was identification: *i.e.*, whether Petty was one of the men who burglarized the house. The testimony provided by Witness did not address identification and she explicitly stated that she did not know who broke into her home. Instead, although no witnesses specifically identified Petty as one of the suspects they saw on scene, the prosecution proved that Petty was involved in the burglary through circumstantial evidence. For example, evidence matched Petty to the description of the suspects at the scene, his fingerprints were found on the trunk of the Dodge, his drivers' license was in the vehicle, and when he was later apprehended by the police, he had jewelry and a Dodge vehicle key in his possession. Moreover, a police officer testified that Petty stated that he was "hanging" with a friend near the house and that Petty acknowledged that he ran from the area, but denied breaking into the house.

¶9        The jury also heard testimony that the back door had been broken and forced open. *See State v. Kindred*, 232 Ariz. 611, 614, ¶ 11 (App. 2013) ("[A] defendant's forced entry into a structure permits a jury to infer that defendant had the requisite specific intent for burglary.") (citing *State v. Malloy*, 131 Ariz. 125, 130 (1981)). Officers saw that while the house was clean and in order, the bedroom looked like it had been ransacked. Officers also found a sock and a towel, and police testified at trial that those items could be used by burglars as a glove or to break windows.

¶10       The only material testimony offered by Witness was the identification of the jewelry that was recovered and her statement that she had not given anyone permission to enter the home. Because burglary does not require a completed theft and is committed by an unlawful entry with intent, her identification of the jewelry only indirectly related to an element of the offense.[1] Those elements were overwhelmingly proven by other

_____

[1]        A police officer also testified, without objection, that the jewelry recovered from Petty belonged to Witness. Although this testimony was based on Witness's identification of the property, Petty did not object below and has not challenged the admission of this testimony on appeal. Because the identification of the property was only indirectly related to an element

evidence of the circumstances of the offense (the safety vests, jumping fences, alarm going off, back door smashed open, fleeing suspects, and a ransacked bedroom). This circumstantial evidence established unlawful entry and the requisite intent to commit a theft. *See id.*

**¶11** Accordingly, even without Witness's testimony, overwhelming evidence showed Petty had committed each of the elements of the charged burglary. Accordingly, we hold that any error in allowing Witness to testify remotely was harmless.

## II. Fourth Amendment Claim

**¶12** Petty also claims that the police violated his Fourth Amendment rights by illegally searching the Dodge Charger. Under the "automobile exception," officers may search a vehicle if they have probable cause to do so, even without a warrant. *Collins v. Virginia*, 138 S. Ct. 1663, 1669-70 (2018). At the time the police searched the vehicle, they had evidence that the Charger had been used by burglary suspects: an officer saw one of the suspects walk toward the Charger and then flee on foot when he saw the officer, and a neighbor who called 911 pointed out the Charger to the police. Thus, the officers had probable cause to search the vehicle and did not violate Petty's Fourth Amendment rights.

## III. Ineffective Assistance of Counsel

**¶13** Petty also claims his counsel's performance was deficient. This Court will not consider claims of ineffective assistance of counsel on direct appeal. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002). Such claims must be first presented to the trial court in a petition for post-conviction relief. *Id.*

## IV. *Anders* Review

**¶14** In addition to the arguments presented in Petty's brief, we have searched the entire record and have not found fundamental error.

---

of the offense, and Petty's defense was based on whether Petty was one of the men who had entered the house, the admission of the officer's statement was not fundamental error. *See Henderson*, 210 Ariz. at 567, ¶¶ 19-20 (noting that defendant bears the burden of persuasion in fundamental error to show an error that goes to the foundation of the case and denied defendant a right essential to his defense) (citations omitted).

**CONCLUSION**

**¶15**      Petty's conviction and sentence are affirmed.  Defense counsel shall inform Petty of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review.  *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).

**¶16**      Petty has thirty days from the date of this decision to proceed, if he wishes, with an in propria persona motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA