NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOHN DOUGLAS ALLEN, *Appellant.*

No. 1 CA-CR 18-0206
FILED 3-21-2019

Appeal from the Superior Court in Maricopa County
No.  CR2016-156181-001
The Honorable Michael W. Kemp, Judge

**REVERSED IN PART, MODIFIED IN PART; REMANDED FOR
RESENTENCING**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

¶1          John Douglas Allen appeals his convictions and sentences for third-degree burglary and theft. For the reasons that follow, we reverse the burglary conviction, modify the theft conviction and remand for resentencing on the theft conviction.

## FACTS AND PROCEDURAL BACKGROUND

¶2          A grand jury indicted Allen on charges of third-degree burglary, a Class 4 felony, and theft, a Class 6 felony.

¶3          According to the evidence at the resulting trial, the owner of a black GMC Sierra truck had backed the truck into a parking space in a motel parking lot, leaving approximately one to two feet between the back of the truck and a row of bushes lining the parking lot. Before dawn the next morning, police responded to a report from a security guard at an amusement park just north of the motel parking lot. The guard reported seeing a suspicious white truck, later identified as Allen's truck, in the alley west of the amusement park. The guard saw someone get out of the truck, walk away and never return. He saw a second individual, likely Allen, exit the driver's side of the truck, walk toward the motel parking lot, and look through the row of bushes for less than five minutes.

¶4          An officer found Allen's truck in the alley, unoccupied with its keys still in the ignition. Allen then ran up from the direction of the motel and started speaking with the officer. A second officer arrived and noticed a black tailgate lying in Allen's truck bed. When asked about the tailgate, Allen admitted he "took" it and planned to sell it. Officers eventually determined the tailgate had been removed from the black truck parked at the motel. They located the owner of the truck, who did not know Allen and had not given him permission to take the tailgate.

¶5          A crime scene specialist took photographs and processed the tailgate for latent fingerprints ("prints"). The specialist lifted what appeared to be four prints from the left and lower center and left upper portions of

the exterior of the tailgate. The specialist used arrows to document the orientation of the prints, noting all of them were pointing toward the top, right, or left side edges of the tailgate. The specialist processed the interior of the tailgate for prints with "negative results." Other than the tailgate, the specialist did not look for prints anywhere else on the truck.

¶6         A forensic analyst identified one of the prints from the tailgate as matching Allen's right middle finger. Per the specialist's notes, the print that matched had been lifted from the lower left portion of the tailgate's exterior and was oriented so that it appeared that Allen's finger was extended toward the right edge of the tailgate. The analyst did not look to see whether any of the other three prints matched Allen's.

¶7         An officer spoke with a representative from a vehicle dealership; he also reviewed the GMC Sierra owner's manual instructions on tailgate removal. The printed instructions, which were admitted in evidence, were consistent with testimony about how to remove the tailgate given by the truck's owner and the officer who placed the tailgate back on the truck. By these accounts, removal requires the following: (1) use the exterior latch to partially open the tailgate; (2) disconnect the cables on the right and left sides of the tailgate by unlocking the cable clips from bolts posted in the inner portion of the tailgate's side wall; (3) with the tailgate halfway open, lift the right edge of the tailgate from the right lower pivot; then (4) slide the tailgate to the right to release it from the left edge.

¶8         The officer testified the dealership representative told him tailgates are typically valued at "approximately $1,000 or so," depending on the paint, installation, and whether the tailgate had a back-up camera. The victim did not file an insurance claim for replacement of the tailgate, which lacked a back-up camera, and he did not know the value of the tailgate.

¶9         The jury convicted Allen of burglary and theft and the superior court imposed concurrent sentences, the longest of which was six years. Allen timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019), 13-4031 (2019) and -4033(A) (2019).[1]

---

[1]         Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

**DISCUSSION**

**A.    Insufficient Evidence Supports the Burglary Conviction.**

¶10          Allen argues insufficient evidence supports his conviction of third-degree burglary, contending the State failed to show he entered the truck bed as defined by A.R.S. § 13-1501(3) (2019).  We review *de novo* the sufficiency of the evidence to support a conviction.  *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)).  We review the superior court's interpretation of statutes *de novo*. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014).

¶11          As relevant here, a person commits third-degree burglary by "[e]ntering or remaining unlawfully in or on a nonresidential structure . . . with the intent to commit any theft or any felony therein."  A.R.S. § 13-1506(A)(1) (2019).  Rooted in common law, the statute defines "entry" as "the intrusion of any part of any instrument or any part of a person's body inside the external boundaries of a structure or unit of real property."  A.R.S. § 13-1501(3); *see* 3 Charles E. Torcia, *Wharton's Criminal Law* § 322, at 247 (15th ed. 1995) ("There is an entry when any part of the defendant's person passes the line of the threshold.").

¶12          A truck, including its bed, is a "structure" as defined by § 13-1501(12).  *State v. Bon*, 236 Ariz. 249, 253, ¶¶ 12, 15 (App. 2014).  In *Bon*, we held that reaching inside the bed of a truck constituted an entry, as contemplated by § 13-1501(12).  236 Ariz. at 253, ¶¶ 13-15.  We stated, "The sides of the truck bed indicate the external boundary of that part of the vehicle.  And, reaching into the truck bed amounts to an entry."  *Id*. at 253, ¶ 14.  The question, therefore, is whether the State presented evidence to show Allen entered the bed of the truck in removing the tailgate.

¶13          Here, the direct evidence showed only that Allen touched the left side of the tailgate's exterior with his finger pointed toward the right edge.  No prints were found on the tailgate's latch, the inner frame, the side wall of the truck or the tailgate's interior.  Even if a rational jury could infer that Allen removed the tailgate, the evidence (whether direct or circumstantial) showed at most that to do so, he would have had to place his hand in the tailgate's latch (located on the exterior of the tailgate) and then disconnect the cables from the bolts affixed to the side wall of the truck before dislodging the tailgate, first one side and then the other.  Contrary to

the State's contention, he would not have had to climb into the bed of the truck to remove the tailgate. Indeed, it is not reasonable to conclude that someone would stand in the bed of a truck to remove its tailgate. From the bed of the truck, releasing the exterior latch would require an awkward reach over the top of the tailgate to pull down on the latch, and from there, one would have to somehow hold the gate partially open with one hand while releasing the cables, first one side and then the other. The only reasonable position from which to remove the tailgate of the truck is while standing outside and to the rear of the truck.

¶14 The State argues that even one approaching the tailgate from the rear would have to breach the "external boundaries" of the truck bed to unclip the two cables from the truck. *See* A.R.S. § 13-1501(3). But photographs in evidence showed that the bolts to which the cables were clipped were located on the interior side wall of the truck along the geometric plane created by the closed tailgate. No evidence showed that one would have to break that plane (i.e., reach inside the bed of the truck) to unclip the cables.

¶15 The State's reliance on *State v. Kindred*, 232 Ariz. 611, 614, ¶ 9 (App. 2013), is misplaced. There, we held that the insertion of a pry bar into the door jamb constituted entry under § 13-1501(3). 232 Ariz. at 614, ¶ 9. We noted that "penetration into an outer barrier violates the home's security" and "strongly suggests such penetration constitutes entry." *Id.* at ¶ 8. Notably, the evidence in *Kindred* showed the pry bar penetrated the door jamb. *Id.* at 613, ¶ 2.

¶16 Nor do the out-of-state cases the State cites compel a different outcome. In *Commonwealth v. Burke*, 467 N.E.2d 846, 847 (Mass. 1984), blood on the defendant's hand showed he had reached through a broken window into the home. The State also cites a pair of Texas cases, *Ortega v. State*, 626 S.W.2d 746 (Tex. Crim. App. 1981), and *Williams v. State*, 997 S.W.2d 415 (Tex. App. 1999), neither of which is on point. In *Ortega*, the defendant pulled off the screen door to a home, thereby entering "into that part of the house between the screen door and the wooden door." 626 S.W.2d at 747. No such entry was present here. In *Williams*, the court reaffirmed that there must be some "physical entry into the protected area" and upheld the defendant's conviction upon evidence he was walking away from an open garage door after having broken the structure's door frame. 997 S.W.2d at 417-18. Meanwhile, the same Texas court held in *Griffin v. State*, 815 S.W.2d 576 (Tex. Crim. App. 1991), that burglary does not occur when an item is removed from the exterior of a vehicle: "The protection is to the interior or

enclosed part of the described object, be it a house, a building or a vehicle." *Id.* at 579.

**¶17**        In short, the State failed to present sufficient evidence of entry as contemplated by § 13-1501(3), an essential element of the offense. *See West*, 226 Ariz. at 562, ¶¶ 15-16. Because insufficient evidence supports Allen's conviction for third-degree burglary, we reverse the conviction.

## B.        Improper Admission of Hearsay.

**¶18**        Allen further contends the admission of hearsay to establish the value of the tailgate constituted error that impaired his theft conviction. Because he failed to object to the evidence, we review for fundamental error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018) (clarifying fundamental error review). To establish fundamental error, a defendant bears the burden of "showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* at 142, ¶ 21. If a defendant establishes fundamental error under either prong one or two, he must make a separate showing of prejudice. *Id.*

**¶19**        Though generally inadmissible, hearsay evidence admitted without objection is "competent evidence admissible for all purposes." *State v. McGann*, 132 Ariz. 296, 298-99 (1982); *see* Ariz. R. Evid. 801, 802. However, we have held that admission of hearsay evidence as the sole proof of an essential element of an offense constitutes fundamental error. *McGann*, 132 Ariz. at 299; *see also State v. Allen*, 157 Ariz. 165, 171 (1988) (admission of hearsay that is "the only evidence of the details of the crime" constitutes fundamental error).

**¶20**        A theft of property valued at more than $1,000 and less than $2,000 is a Class 6 felony. A.R.S. § 13-1802(A)(1), (G) (2019). The value of the property is an essential element of the offense and raises the offense from a misdemeanor to a felony. *Id.* The State must prove the "fair market value" of the stolen property at the time of the offense. A.R.S. § 13-1801(A)(15) (2019); *State v. Randle*, 2 Ariz. App. 569, 570-71 (1966).

**¶21**        The State concedes the officer's testimony regarding the value of the tailgate was improper hearsay but argues the jury could have used its common sense in determining the value of the tailgate based on the owner's testimony and photographs of the truck. The State thereby contends that any error was not prejudicial.

**¶22** We disagree. The owner did not testify about the value of the tailgate. He only testified that he did not see the benefit of filing an insurance claim, and photographs depicting the tailgate at the time of the offense, without any reference to monetary value, do not demonstrate the tailgate's value. Although we have held that jurors may use their common sense in determining the value of stolen property, the State must present some evidence to allow for such a finding. *See State v. Grijalva*, 8 Ariz. App. 205, 207 (1968) (jurors may not base their value determination solely on speculation).

**¶23** The impermissible hearsay evidence constituted the sole proof of the tailgate's value, an essential element of the offense, and such error went to the foundation of the theft conviction and prevented Allen from receiving a fair trial on that charge. *Escalante*, 245 Ariz. at 142, ¶ 21. Allen therefore has met his burden of showing fundamental error that caused him prejudice. *Id.* In the absence of evidence that the tailgate was worth $1,000 or more, we modify the judgment of conviction to reflect a conviction of theft as a Class 1 misdemeanor, under § 13-1802(G), and remand for resentencing. *See State v. Corrales*, 131 Ariz. 471, 473 (App. 1982).

## CONCLUSION

**¶24** For the foregoing reasons, we reverse the burglary conviction, modify the theft conviction to reflect a judgment of conviction under § 13-1802(G) and remand for resentencing on that conviction.



AMY M. WOOD • Clerk of the Court
FILED: AA