NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JACOB KANAKAHOLOKI SAMIA, *Appellant.*

No. 1 CA-CR 23-0254

FILED 10-03-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-138577-001
The Honorable Margaret B. LaBianca, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Amy M. Thorson
*Counsel for Appellee*

The Susser Law Firm, PLLC, Chandler
By Adam Susser
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge David D. Weinzweig joined.

---

**M O R S E**, Judge:

¶1        Jacob Samia appeals his conviction and sentence for one count of Felony Murder, Second-Degree Burglary, Third-Degree Burglary, and Kidnapping.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        We view the trial evidence in the light most favorable to sustaining Samia's convictions, and the evidence presented at trial is detailed below.  *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶3        On October 10, 2020, Samia and several of his coworkers met to "have some drinks" in Tempe, Arizona.  After patronizing several bars where Samia consumed multiple alcoholic beverages, the group went to a nearby house party and Samia continued to consume alcohol.  Around midnight, Samia and a group of people from the party walked to a nearby bar but did not order anything.  The group left shortly thereafter and began socializing on a sidewalk.  Samia then walked to a nearby smoke shop; discovering the door was locked, he began "yelling" and punched the glass door of the smoke shop five or six times, breaking "a hole in the glass" door.  When people with him asked if he was alright, Samia did not respond and walked towards a residential neighborhood.  As he walked, his injured hand left a trail of blood. Samia's group decided they no longer wanted to be around him and walked back to the house party.  Shortly after, one member of the group returned to the smoke shop and called the police.

¶4        When police arrived, they found Samia's cellphone and a watch "in the walkway" near the shop.  Police also observed blood on the damaged window and a trail of blood leading away from the smoke shop to a nearby house.  Following the trail of blood to the house, police discovered a passenger vehicle with a door ajar and blood on the door handle, the "center console area," and the "passenger side seat area."  Police followed the blood trail towards the backyard of the house.  They discovered the back door to the house damaged and a blood trail leading

into the residence. From the patio, police heard an individual "breathing very heavily inside" who did not respond when police announced their presence.

**¶5** Police entered the house and discovered the victim lying on the floor. A pool of blood was beneath the victim's head, and there was a "cable cord across" his neck and "cable wiring around" his bicep. The victim had "significant lacerations to his face," an apparent "bite mark" on his right cheek, a cut to his earlobe, and a swollen face and eyes. Blood was also "splattered" on the walls, a nearby stack of paper, and an extension cord. The victim was unresponsive; police called for paramedics to assist and carried the victim out as he continued to "breathe very heavily."

**¶6** After paramedics transported the victim to the hospital, officers searched the house. Officers discovered blood on a wall, doorjamb, and a trail of blood going to another section of the house. Police also discovered a "significant amount of blood" on a bathroom floor and the inside and outside of a medicine cabinet.

**¶7** At the hospital, the victim was unconscious, intubated, and taken to a "trauma intensive care unit room." The victim never awoke from his coma and was deemed to have "significant damage to [his] brain tissue" and considered brain dead. The victim's family decided to remove him from life support and he died from his injuries on October 20. The medical examiner found the cause of death was a "cerebral infarction in the setting of head and neck trauma," commonly referred to as a stroke.

**¶8** Samia was charged with five counts: (i) Felony Murder, a class 1 felony; (ii) Burglary in the Second Degree, a class 3 felony; (iii) Kidnapping, a class 2 felony; (iv) Burglary in the Third Degree, a class 4 felony; and (v) Criminal Damage, a class 1 misdemeanor. Samia pleaded guilty to Criminal Damage but went to trial on the remaining charges.

**¶9** At trial, doctors and police testified that the victim had several injuries, including "torn" fingernails, red eyes, "ligature marks" on his face, and petechiae—red spots resulting from "broken capillaries"—on his face, head, and eyeballs. Additionally, he had a bite mark on his face, and his shorts were wet, indicative of possible bladder release, a frequent result of strangulation. A medical examiner testified that a blood clot formed in a neck artery which caused the cerebral infarction. The examiner explained that a clot of this nature could form "in the setting of trauma," including through strangulation, but could not specify what caused this clot to occur.

¶10       A police officer present at the crime scene and hospital testified that the petechiae, broken fingernails, and the presence of wet shorts were all "consistent with strangulation." One of the victim's nurses testified that the ligature marks on the victim's neck were likely caused by a "cord [or] rope" and his injuries were consistent with strangulation.

¶11       At trial, Samia moved for a directed verdict, contending the State had failed to prove he committed the underlying crimes required for felony murder. The court denied the motion because the State presented "substantial evidence to warrant convictions as to each of the counts."

¶12       Samia testified that he "was incredibly drunk" that night and did not dispute punching and breaking the smoke shop glass door. Samia stated that he thought the victim's residence was the same as the house party he previously attended. Believing he recognized the car from the party, Samia said he went into the car to "look for the garage door opener" to get into the residence. After failing to find a garage door opener, Samia testified that he went to the back door and began "shouting," hitting, and kicking the door to try and get someone's attention. Samia eventually applied "more pressure" on the door and got inside. Once inside, Samia testified the victim "came rushing out of the darkness" and a fight ensued. Samia admitted to biting the victim and "squeez[ing] his neck . . . to cause discomfort" until the victim "slack[ed] off a little bit." Samia admitted that this equated to "strangl[ing]" the victim. Samia testified that he then fled the house without taking anything, and never held or tied the victim down.

¶13       After fleeing the house, Samia testified that he ran through the victim's yard before "falling into . . . an irrigation ditch." He testified that he then wanted to "change [his] shirt from this dirty, blood-encrusted, heavy shirt" and stole a shirt from a nearby clothesline. Samia testified that he knocked on a nearby house's door and asked the occupants to call the emergency services; paramedics arrived, treated his injuries, and took him to the hospital.

¶14       A jury convicted Samia on all four remaining trial counts. Separately for each count, the jury found Samia guilty of aggravating factors. The court sentenced him to life in prison for Felony Murder, 21 years for Second-Degree Burglary and Kidnapping, two years for Third-Degree Burglary, and six months for Criminal Damage—all to run concurrently. He was given 972 days credit for presentence incarceration. Samia timely appealed and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

**¶15** On appeal, Samia does not claim there was insufficient evidence that he killed the victim. Samia only argues that there was insufficient evidence to convict him of the underlying charges and the predicate felonies for the Felony Murder charge. The State disagrees.

**¶16** Sufficiency of the evidence is a question of law we review de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). In considering the sufficiency of the evidence, we view all facts in favor of the verdict and resolve all evidentiary conflicts against the defendant. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). "Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Ellison*, 213 Ariz. 116, 134, ¶ 65 (2006) (cleaned up). If reasonable people "could differ as to whether the evidence establishes a fact in issue, that evidence is substantial." *State v. Mincey*, 141 Ariz. 425, 432 (1984). Further, in conducting our review, we compare the evidence "against the statutorily required elements of the offense," *State v. Brock*, 248 Ariz. 583, 592, ¶ 22 (App. 2020) (quoting *Pena*, 209 Ariz. at 505, ¶ 8), and do not "reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact," *State v. Barger*, 167 Ariz. 563, 568 (App. 1990). Substantial evidence may be direct or circumstantial. *Pena*, 209 Ariz. at 505, ¶ 7.

## I. Felony Murder.

**¶17** As charged, to commit Felony Murder, a person must cause the death of another "in the course of and in furtherance" of committing or attempting to commit Second-Degree Burglary or Kidnapping. A.R.S. § 13-1105(A)(2).

**¶18** To commit Second-Degree Burglary under A.R.S. § 13-1507, a person must enter or remain "unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." Samia contends that the State failed to provide sufficient evidence that he committed "theft" or any other predicate felony. This argument lacks merit.

**¶19** Aggravated assault can serve as "any felony therein" to sustain Second-Degree Burglary. *See State v. Hankins*, 141 Ariz. 217, 221 (1984) ("[R]emaining unlawfully in a residence with the intent to commit an

assault is a burglary and the burglary warrants a felony murder charge.").[1] As relevant here, a person commits aggravated assault by assaulting another, and either: (i) the victim is seriously physically injured; (ii) a "deadly weapon or dangerous instrument" is used; (iii) uses force to cause "temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part"; (iv) "the person commits the assault while the victim is bound or otherwise physically restrained or while the victim's capacity to resist is substantially impaired"; or (v) enters "the private home of another with the intent to commit the assault." A.R.S. § 13-1204. A person commits assault by "[k]nowingly touching another person with the intent to injure, insult or provoke such person." A.R.S. § 13-1203(A)(3).

¶20 Substantial evidence was presented that Samia "unlawfully" entered the victim's house. Samia admitted that he was "kicking and hitting" the back door before unlawfully gaining entry to the victim's house. Samia also admitted to entering the victim's vehicle unlawfully to "grab a garage door clicker" to enter the house. *See* A.R.S. § 13-1501 (defining unlawfully entering as "a person who enters or remains on premises when the person's intent for so entering . . . is not licensed, authorized or otherwise privileged"); *State v. Taylor*, 25 Ariz. 497, 499 (App. 1976) ("An inference of the intent necessary for conviction of burglary may be drawn when unauthorized entry into the premises is gained by force.").

¶21 At trial, Samia also admitted to "pushing" the victim, punching the victim "as hard as [he] could" multiple times, biting the victim, and putting "constant force and pressure" on the victim's neck. From this evidence, a reasonable jury could conclude that Samia punched, bit, pushed, and put pressure on the victim's neck with the intent to injure, insult, or provoke. *See State v. Lester*, 11 Ariz. 408, 410 (App. 1970) ("Intent may be inferred from the acts of the accused and the circumstances of the assault."). Further, the jury heard substantial evidence that (a) the victim was "seriously physically injured," (b) Samia's use of force caused "substantial disfigurement," and (c) there was "substantial loss or impairment of any body organ."

¶22 Because the State presented sufficient evidence to support Samia's Second-Degree Burglary conviction, we affirm Samia's Felony Murder conviction. *See State v. Greene*, 192 Ariz. 431, 437, ¶ 19 (1998) (stating

---

[1]     Depending on the subsection, A.R.S. § 13-1204 classifies aggravated assault as a felony, ranging from class 2 through class 6.

that a defendant need only be convicted of one predicate offense for a felony murder conviction to stand).

## II.    The Other Offenses.

¶23     Samia also asserts that the evidence was insufficient to sustain his Kidnapping, Second-Degree Burglary, and Third-Degree Burglary convictions.  As discussed above, *supra* ¶¶ 17–22, we find sufficient evidence for Second-Degree Burglary and affirm that conviction.  We address Samia's challenges to his convictions for Kidnapping and Third-Degree Burglary in turn.

### A. Kidnapping.

¶24     Under Arizona law, kidnapping occurs when one "knowingly restrain[s] another person with the intent to . . . [i]nflict death [or] physical injury . . . on the victim."  A.R.S. § 13-1304(A)(3).[2]  Restraint is defined as "restrict[ing] a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person . . . or by confining such person."  A.R.S. § 13-1301(2).  Restraint without consent requires physical force, intimidation, or deception.  *Id.*

¶25     Substantial evidence was presented that Samia restrained the victim with intent to cause physical injury.  Samia admitted he intentionally placed his hands around the victim's neck and squeezed with enough force until the weight of the victim "slack[ed] off."  Samia admitted in his testimony that this amounted to strangling the victim.  Strangling a victim is a form of restraint for kidnapping purposes.  *See State v. Lelevier*, 250 Ariz. 165, 173, ¶ 37 (App. 2020) (finding evidence of strangulation as a restraint for kidnapping).  The State also offered the following evidence that the victim was strangled: (i) there were ligature marks around the victim's neck; (ii) the victim was found with cable around his bicep area and across his neck; (iii) the victim's shorts were wet, likely from losing control of his bladder; (iv) the victim's fingernails were broken and damaged; and (v) the presence of many petechiae.

¶26     In light of this evidence, a reasonable jury could conclude that Samia restrained the victim with the intent to cause physical injury, supporting the Kidnapping conviction.

---

[2] Under A.R.S. § 13-1204(B), kidnapping ranges from a class 2 through 4 felony.

7

## B. Third-Degree Burglary.

**¶27**     To secure a conviction for third-degree burglary, the State was required to show Samia "[e]nter[ed] or remain[ed] unlawfully in or on a nonresidential structure . . . with the intent to commit any theft or any felony therein." A.R.S. § 13-1506(A)(1). Intent may be inferred and does not need to be supported by direct proof. *State v. Noriega*, 187 Ariz. 282, 286 (App. 1996) ("[T]he defendant's mental state will rarely be provable by direct evidence and the jury will usually have to infer it from his behaviors and other circumstances surrounding the event."). But intent is not always inferred from entry alone; courts will look for additional evidence to support the finding. *State v. Malloy*, 131 Ariz. 125, 130 (1981).

**¶28**     The State presented substantial and undisputed evidence that Samia entered the vehicle unlawfully. Samia himself testified that he entered the car with no permission from the owner. It does not matter that Samia believed he "recognize[d] the car from the house party." A reasonable jury could find that Samia entered the car unlawfully.

**¶29**     The evidence is much closer regarding Samia's intent to commit a theft or felony inside the vehicle. To begin, there were no signs of forced entry into the vehicle. *See Malloy*, 131 Ariz. at 130 (stating that unauthorized entry by force may sustain a burglary conviction); *State v. Kindred*, 232 Ariz. 611, 614, ¶ 11 (App. 2013) (stating that forced entry permits an inference that the defendant had the requisite intent for burglary). Nor were there any tools, confessions, or conversations evidencing any such criminal intent. *See State v. Rood*, 11 Ariz. 102, 104 (App. 1969) (stating that circumstantial evidence to prove intent can include tools, confession, or prior conversations).

**¶30**     During closing argument, the State argued that Samia was trying to steal cigarettes from the car, pointing to Samia's admission that he had previously attempted to steal cigarettes from the smoke shop. On appeal, the State only argues that "jurors could conclude that Samia, having been unsuccessful in his attempts thus far to acquire cigarettes, entered [the victim's] car with the intent to look for and steal any cigarettes he might find inside." On its own, Samia's nonforceful entry to the vehicle is not enough to show intent. *See Malloy*, 131 Ariz. at 130. And Samia's blood on the door, the seat nearby the door he opened, and the center console could be consistent with Samia's testimony that he was looking for a garage door opener. But such marks could also reflect someone looking for cigarettes. While the evidence of intent here is thin, we must view it in favor of sustaining the conviction. *Pena*, 235 Ariz. at 279, ¶ 5. A reasonable jury

could infer that Samia's search for cigarettes began at the smoke shop and continued to the car. *See State v. Stidham*, 164 Ariz. 145, 146 (App. 1990) (stating that "the existence of a particular fact before or after the act in question may be shown to indicate the existence of that same condition at the time of the act"). Accordingly, substantial evidence supports the Third-Degree Burglary conviction.

**CONCLUSION**

¶31      For the above-stated reasons, we affirm Samia's convictions.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV